Mr. Kashtan, happy to hear from you. Thank you, Your Honor. May it please the court, my name is Jeff Kashtan of King & Spaulding. I represent Progressive Direct Insurance Company, the appellant defendant. I'd like to reserve five minutes for my rebuttal. In this breach of contract lawsuit, plaintiff alleges that she was paid less than she was owed under her automobile insurance policy for her total-loss vehicle. The district court abused its discretion in certifying the class. While we make many arguments in our briefs, we're going to focus on three in argument, unless the court has other questions. First, the policy at issue requires Progressive to pay the insureds the actual cash value of their total-loss vehicles. In evaluating predominance, the district court abused its discretion by focusing on plaintiff's challenge to an isolated intermediate step in Progressive's process for estimating actual cash value. The proper focus for this breach of contract action is not any alleged flaws in Progressive's methodology, but whether at the end of the day the insured was paid actual cash value. If we agree with you on the standing issue, we would not have to reach the class certification. That's correct, Your Honor, and that was going to be the third point I was going to address. I was following a little bit of the lead from Mr. Deese in which that came up last, but I'm happy to address that now, Your Honor. No, no, no. Go ahead on the standing point. Sure, Your Honor. On the standing point, plaintiff Freeman lacks standing to even bring her claim and just thus cannot represent the class. In addition to her policy with Progressive, Ms. Freeman had a loan payoff and a gap insurance coverage policy, and so when her car was totaled, the insurance companies collectively paid the lender the amount she owed. She was underwater, meaning she owed more than she was going to get for her total-loss vehicle. The only amount Ms. Freeman paid was her deductible, which was $2,000, and she agreed in discovery under oath that even if the projected sold adjustment had not been applied, the result would have been the same. She would have received money, it would have been paid directly to her lenders, she would have paid a $2,000 deductible. So your point is at the end of the day, there's no harm. At the end of the day, there's no concrete financial harm that she has suffered that's traceable to the breach she's alleged. Let me ask you about the breach. I had quite a bit of trouble with that. Everybody seems to conceivably talk about a breach of contract here, and if you look at the policy, the policy says we'll pay a total loss for an automobile, and the policy said we agree to pay the actual cash value. They define the actual cash value as the market price. Then the policy says the way we will compute the market price is X, and it says if you don't agree, you can go through this appraisal process, sort of an appraisal arbitration. So if Progressive takes a position, this is the market price, and they even disclose how they computed it, that's not a breach. That's a position as to how they construe it. It's a factual matter, and she can turn that down. She can come with her own assessment of it, and if they disagree and can't reach an agreement, then they go to this arbitration, appraisal arbitration. That's what the policy says, right? That's essentially correct, Your Honor. But if the company takes a position in computing the market price, that's not a breach. They have an obligation to pay the market price. That's the contract, and the question is what is the market price? And so the company says the market price for this car is $19,000, and she says, oh, no, I think the market price for my car is $25,000. Now, they can settle it somewhere in between, or if they don't settle it, and this is what the policy provides, if she doesn't agree, then she goes through that appraisal process, which is in the policy, which is you have two appraisers, it's an arbitration of appraisal. So none of that is a breach. What that is is a disagreement over the market value. And so every single insured, it has to go through this negotiation. They can accept what Progressive offers, or they don't have to accept it, but every single one is going to be unique. That's absolutely right, Your Honor. But there's no breach involved, and there's no, it can't be in a class because every one of them is unique. You can't have a class, somebody negotiates this deal and somebody else negotiates this deal, and the only thing that everybody's complaining about is Progressive takes a position that in computing market price, we do A, B, and C. Now, I must say, I think Progressive's got a pretty crazy assessment the way they do the market price, but they're entitled to say what they believe the market price is. Their obligation is to play market, and they say this is the market price, and they have a disclosed process. But the insured doesn't agree to any particular market price. It's just market price. And so the insured can say no, and the policy anticipates it, and it says here, it says, where's the, we may use estimating appraisal and so forth, such system. If any, no, no, no, no, no. There's a place that says if you don't agree on the market price, then you can go to an appraisal. That's right, Your Honor. Now, it seems to me if that's provided in the policy, it can't be a breach to have a disagreement over the market price. Yeah, Your Honor, I don't fundamentally disagree with you. You represent Progressive, of course, and we agree. And we think the district court did get it right when it held at page 2 of its decision that the policy does not require the use of any specific methodology to estimate actual cash value. And that's what the district court held. And even if it did, it says this policy, you have to agree to this. The policy does just the opposite. It says you don't have to agree. Now, the appraisal provision, I have to be candid with the court. The appraisal provision is not mandatory. And so it is the case, I think, that if Progressive was proved to have not paid actual cash value, then Progressive might have been in breach of the contract. Where is that in the policy? I'm just looking. Your Honor, the limits of liability provision of the policy set forth the amounts up to which Progressive has to at least pay. And so it at least has to pay actual cash value. Well, it has to pay, but market is a defined actual cash price market. That's right. And so the market price, normally the typical market price is what the market is, where buyers and sellers sell that car. That's exactly what Dr. Armstrong says. So you look at 20 transactions and it gives you the market price. And you can have a disagreement over that. I mean, you can say, well, this market price, this particular sale was influenced this way, this way. But there is a, I'm just looking for that appraisal provision in the policy. I have it before me. Well, and you're right, Your Honor, that, I mean, what you're putting your finger on and getting exactly right is that ultimately to determine for any individual member of the class whether or not there was a breach and not paying market value or actual cash value, we have to determine what is the actual cash value of the vehicle. That's a factual question. Factual. That can't be a breach of contract. It's a negotiated item. It certainly can't be a question that can be resolved commonly across the class. It will require many trials where you have to introduce evidence of what was that particular vehicle worth and what was that person paid and how do you compare the two. And the plaintiffs, they engaged in this charade with the court and the district court, unfortunately, went along with it to say the breach is applying the PSA. But as the Seventh Circuit explained in the Cartman case, you don't look at these intermediate steps. Instead, you look at were they paid the amount they were owed or not. All right. Here's the provision I want to ask you about. Yes, Your Honor. It says if we cannot agree with you, if we cannot agree with you, that presumes that there's some negotiation. If we cannot agree with you on the amount of a loss, then you may demand an appraisal of the loss. And then it gives you a process to how that's done, 30 days and this and you go to appraiser. So it seems to me that your obligation, contractual obligation, is to provide the insured with a market price loss that you determine in good faith is the market price. She can come in and say that I don't agree that loss. I think the loss is valued at much higher. Now, after that point, this says if we cannot agree with you on the amount of loss, then you go through this process. That looks to me like that's the overture that if they don't go to that, then there might be a breach. But I don't see a breach anywhere in this stream of events. And if there is a breach, it would be the breach to fail to negotiate, I guess, or something. But that's not what they're alleging. They're alleging the fact that Progressive computes its view of the market price with a certain facility. And I'm going to say it's crazy as can be, what you guys do, this predictive of what's being asked and a percentage discount on that. Looking future devices, you can just pass that on. That's not material to what I'm talking about. That does go to the merits, Your Honor, but I will say that we, first of all, it's done by Mitchell and it's done- Well, I know it's done by Mitchell. But you have this, you canvass the asking price for cars and then predict what they'll be sold at. That is crazy. I mean, that's not a market. That's a prediction of some future transaction that you don't know what. When you canvass a dealer and say dealer A is asking $21,000, dealer B is asking $26,000, and then you predict how both of them are going to sell, and then one of them sells, is a no-hassle place, so they sell it at their $26,000. You discount that because that's not a fair market price. It is. A purchaser who pays the no-hassle price is a market value. So, Your Honor, just the record does explain that the projected sold adjustment is not- I know, I've read all that. It's only applied to dealers who do, in fact, negotiate. I understand, but the whole thing is predictive. And a market is not predictive. A market is actual market price that it's being sold at right now. But I think you've put your finger, Judge Neumeier, on the key point, and the key point being that in the end, regardless of how they come up with what the breach of contract should look like, in the end- Why do you say breach of contract? Give me what you understand as the breach. Well, again, I'm the defendant, Your Honor, so I am- I know you, but you keep calling it a breach of contract. Well, I can only read their complaint, Your Honor. And what they say in their complaint the breach is, is that the breach is the failure to pay actual cash value. And taking them at- Well, how do you know it's a breach? What if they give $100 over actual cash value? Who's to determine that? Well, I think it needs to be determined individually by a jury. And I think you do that. You'd have to do that individually for each class member, which is why there shouldn't be a class- You can get an appraisal. Now, why isn't that the resolution of the fact question? And where's the breach under that structure? Your Honor, I'd be very happy with an opinion from this Court that also comes out that way, because Ms. Freeman- Well, I'm just- Excuse me. You guys have so readily conceded the breach. Let me ask you that. I think my colleague is on to a good point here, that it's not a breach. I mean, you have- this case is constructed so you have argument A. If that fails, you have argument B. If that fails, you have argument C. And each of those arguments presents problems of its own. The first question is whether there's a breach and a mere disagreement over the cost adjustment. That disagreement doesn't mean necessarily that there is a breach. Okay. That's hurdle A. All right. Now we get to hurdle D, which is even if there was- assuming that there was a breach, the violation of a contract by itself is not necessarily a concrete harm if the individual received what they were due, and she was going to have to pay the $2,000 deductible in any event. So that, I think, is the hurdle B, is if she was compensated for all the different components that she had purchased coverage for, then that's probably within the position of saying the mere violation of a contract is not a concrete harm in the kind that the Supreme Court has required. We get past that, we come to hurdle C, which is the fact that the cost adjustments for all of these different cars are very individuated depending on the car and the market condition and how much of the mileage that the car has driven, the make of the car, this and that. And so you're asking down the road if this continues as a class action, you're asking for one gigantic headache at the damages phase of the case. And, of course, that relates back into the absence of commonality. But as I see it, and I think Judge Niemeyer's point is very well taken, but that only relates to hurdle A. The other two hurdles are just as real. I think you both see it very clearly, and I think you're right. Judge, may I add to one more to your little hurdle? What? The fact that the contract provides a remedy that hasn't been followed, the appraisal. The only thing I would add, Your Honor, is I think that Judge Wilkinson, your last point about the individual trials, it's not even just damages. It would go to liability, too. I think you both see it clearly, and I think that that shows that this case, there was an abuse of discretion here in certifying this class. The court below was led astray by arguments, and, frankly, I think as a result, applied the law incorrectly to this contract. This contract, when properly understood. But Judge Niemeyer has made a really good point. It does seem to me that the fact that there's a disagreement over the cost adjustment or the disagreement over the amount of the payment, that doesn't indicate a breach of contract. It indicates the beginning of a process. Yeah, and I think it really instructs you, Your Honor, is the Lewis decision from the Third Circuit. That was a decision where the court explained exactly what you're saying, that you don't look at these disputes about intermediate steps and use that for a basis for certifying a class. You need to look at what does the contract say in its full. But even apart from the certification of the class, we have to ask whether there's some sort of breach or some sort of concrete harm. And if there is no breach, because of Judge Niemeyer's point about this is the inception of a process, but if there's no breach, where's the concrete harm in terms of purposes of standing? And even here, Your Honor, with Ms. Freeman, even if there were such a breach, there's still no concrete harm. She will be left in the same position she's in now, which is having to pay the $2,000 deductible and her loan otherwise being paid off. It's not like she's going to get some recovery from this theory that she otherwise didn't receive. And so for that reason, she has no standing. Would there be a subrogation interest of some of these other carriers involved in her gap insurance and that type of thing? There's been none asserted, Your Honor. But wouldn't that be an argument to counter? In other words, the fact that she has purchased insurance to cover her loss, well, it's actually her, she's underwater. Her obligation. Yeah, yeah. That's sort of a collateral source, the question is. It's not clear. I mean, we did note in our most recent 28J letter that there is South Carolina law making it clear that when a third party satisfies a financial loss, then there's no claim for that financial loss. And so she certainly doesn't have a claim for that. And there's been no indication that her gap insurer has any claim here. If they want to bring a case, I suppose we would deal with that issue then. But the question here is whether Ms. Freeman can represent the class. And we don't think she can. If I may, I'll save my remaining time. Is she the only representative, Marty? Yes, Your Honor. Thank you. Thank you. Hold on a minute. Judge Berner, I don't want to cut you off. Did you have some questions? I'm too long. I'll save my question for rebuttal. Thank you. Okay. Thank you. Mr. Phillips. Thank you, Your Honor. May it please the Court. I had the whole intro, but I have a feeling that we need to jump right into these issues. So which one do you want me to start with, the breach or the Article III? Well, let me ask you this. Okay. I think all the hurdles that Judge Wilkinson listed are things that you should be prepared to address. But I'm wondering when a contract has an arrangement that says we'll pay market value, if we don't agree on market value, we'll go through an appraisal process. Respectfully, Your Honor, that's not what it says, right? It says if we cannot agree with you on the amount of loss. On the amount of loss, right. There's no disagreement about the amount of loss here. The disagreement is over the actual cash value of the vehicle. Hold it. The loss is the actual cash value, which is the market value. No, the actual cash value is the limit of their liability for loss. Typically, loss is measured as the cost to repair or replace. To replace, it says, to replace it is the actual cash value. To replace it. And they define actual cash value as the market value. Correct. And the market value, so if you've lost your automobile, the policy obligates the insurance company to pay the market value of the vehicle. Correct. And I agree with Mr. Cashier, what he said. Now, when you talk about market value, that is not a specific number. The market value is something that needs to be determined. And there's a disclosure as to how Progressive will do it. But there is also a provision where if the insured disagrees, he can get an appraiser. It says either party may invoke an appraisal, but you're not required to. Not required to, but why is it a breach if you have a disagreement? Because they underpay actual cash value. They have an independent obligation to pay actual cash value. They say it's their actual cash value, and you disagree. And our evidence is that it's not. Right. So now you have a negotiation. They say the cash value of the car is $19,000 or $25,000, and you say it's $19,000. So you've computed it $19,000. No, excuse me. You're representing the plaintiff. You say it's $25,000. Right. They say it's $19,000. Now, have they breached the contract by saying we believe the market value is $19,000? If our evidence is credited by a jury, then absolutely they breached the contract. Why? Because a jury found that the actual cash value is $25,000, and they only paid $19,000. That's not a breach. That's not a breach. That's just the amount of loss to pay the loss, and the policy has a process to adjust that loss. If we get to a jury, and a jury says the actual cash – You have to have a breach. Right, but we're proving the breach, right? We've proved the breach. If the jury says – If they didn't pay the loss, but if they paid the loss, and they said here's a check for the market value of that vehicle. Right. And you say that's not the market value. Right. That's a disagreement as to market value. It's not a breach. If the jury agrees with us, it is. No, it isn't. That's a factual question. Right, and if the jury resolves that – They say the loss is bigger. You've suffered more loss. It's a damage. But the fact is it's part of the coverage, but it's not a breach. There's no determinate amount. In other words, if there was a fixed amount for a car, and they didn't pay it, that's a breach. But the market value, they take a position in good faith that this is the market value. Now, why is that a breach? Cases over the actual cash value of property have been going to juries for 150 years. No question about it. Even when there's appraisal clauses and all that. Because there's a disagreement. And I will say this, Your Honor. If you're right, they can invoke appraisal or move for summary judgment and say there's been no breach. But that is a marriage question. But you're trying to form a class of persons, all of whom have different actual cash values and all of whom have the availability for appraisal, all of whom may have been paid or not, have disagreements. I mean, we're talking about a very highly individualized process to resolve a loss under insurance policy. Fourteen courts have certified the class, so I don't think it's a highly individualized process, according to those 14 courts. We're about to go to trial on a class action next week. That has been very manageable. It took two years, and we're about to go to trial. Also, our understanding, just based on the amount of trials out there that have been around for a very, very long time, where juries say the actual cash value is higher than the insurance company said it was, therefore find that there was a breach. That's why we have a jury. They could agree with Progressive and it won't be a breach. But they might agree with us, in which case Progressive underpaid the actual cash value and there was a breach and damages. Progressive hasn't invoked appraisal, and we're not required to. So you're saying that at this stage in the contract where there's an obligation on the part of the insurance of Progressive to declare, at that point there's a breach, regardless of the fact that there's a process that could be followed afterward that is essentially can or cannot be followed. Right, and that has never been invoked and has never been argued, and Progressive hasn't tried to go to appraisal. And frankly, in the specific context of the auto insurance, Your Honor, we're talking about $700, $900 underpayment, right? It would be economically irrational for any of these insureds to invoke appraisal, pay for the appraisal costs, pay $500, $600 just to get their $600 that they allege were underpaid. It might not be economically irrational for Progressive to invoke the appraisal, but they haven't done that. But we can't be required, the insureds cannot be required to do something that's optional under their policy. No, it's not a question you're required. What it's just the opposite. It's a question that it recognizes that this is subject to a disagreement. The actual value is subject to disagreement. And if the parties in it says, if we cannot agree with you on the amount of loss, that presumes that that could be a source of a disagreement. Sure. Then the contract provides a course of action. It says that you can resolve the disagreement through appraisal, but you're also allowed to. Or you can negotiate it. Or you're allowed to resolve the disagreement through a jury, which is how it happens a lot of times. Yeah, but to have a case, an individual case where there's a disagreement over a market value, go to a class action, doesn't make sense. Because every one of those cases are individual. What the evidence shows is that there is no disagreement on any of the individual valuations of the vehicle, except for the projected sold adjustment. So Progressive and the plaintiffs agree on every single aspect of the valuation. The one thing that they disagreed about is the projected sold adjustment. Our claim is that that projected sold adjustment is invalid always. They say that it's always valid. The parties, in that sense, agree that this is amenable to class-wide resolution. The question is, should their vendor have been excluding? Was that the basis of the district court's determination that the class was appropriate? That's correct. And that determination was not an abuse of discretion. It was consistent with 14 other district courts. This court has said, you only abuse your discretion if you make a decision with which no reasonable jurists could agree. We've got the Ninth Circuit and 13 district courts all agreeing with Judge Coggins' decision. The core question here is whether a Progressive vendor should have been deleting and excluding the data and calculating that projected sold adjustment. What the Eighth Circuit said in Smith was, if it is proven that the projected sold adjustment was based on an artificially false market, in other words, if it was proven that they were not basing it on the overall market, they were basing it on this subset, lowered subset of the market. The predictive market, sort of. Right, that that would be a breach. And so we have now gotten the evidence that shows that the Eighth Circuit was on a motion to dismiss. They said, yeah. What if the policy said, in determining, you don't have to agree, but in determining the loss, we're going to ask three of our claims adjusters their opinion, and we're going to take the average of our three claims adjusters, their opinion, and offer that to you as a loss. If you don't agree, you can go to appraisal. Would that be a breach? It would depend on if they then did that thing. No, the policy, they, you don't agree with the method, but they disclosed the method, which is, they said, in determining the market value, we are going to ask three of our claims adjusters what they believe the value is, and we're going to take the average and offer that to you. Yeah, if they. And is that a breach? Not if they did what the contract said. Yeah, if they then got three of their adjusters. Yeah, well, that's what they're doing here. They disclosed their method here as to how they're going to do it. They have an actual paragraph that discloses their methodology. That's going to be based on the market value aging condition. Yeah, absolutely. Right. The problem here is that they then didn't do that, right? They didn't determine it by market value aging condition. They determined it by an artificially low market-determined invention. That's what the Eighth Circuit said would be a breach if it was proven. We've now got the evidence that that is exactly what happened. And so the core question facing Judge Coggins, which will ultimately face a jury, is, okay, should they have considered the whole market like we say they should have, or should they only have considered the market after they deleted and excluded all the stuff that they didn't like, which was vehicle selling for list price? That's a comment. The answer to that question we both think is equally applicable class-wide. Progressive just thinks that it's always correct, and we think that it's always incorrect. As to the Article III question, this has been addressed a couple of times. We submitted a supplemental authority where that precise question was asked. But the point is Progressive, if we're right, if her allegations are right, Progressive kept money that they agreed to pay her. That's a financial injury. Now, she might have to turn around to a subrogator and pass it along to them. The Supreme Court was facing a very similar question in the Tyler question. Where is the breach of contract if the insurance contract does not forbid the utilization of the projected, of the PSA in determining the amount of reimbursement? The contract itself does not prohibit this kind of utilization of this particular tool. It may be weird. It may be odd. But is it contractually forbidden? What's contractually forbidden is paying less than market value. And so what the projected sole adjustment did is mean that they were paying less than market value. And our evidence is that market value is precisely what they say it is once you just add back in the PSA. So the contract doesn't specifically foreclose all sorts of things that they wouldn't be allowed to do. The process is laid out in the contract in the event of a dispute and a disagreement over the cost adjustment. And have they failed? Has Progressive failed to follow that process in some way? They failed to pay market value, and they chose not to invoke appraisal, and we chose not to invoke appraisal. We decided to settle it. In the event of a disagreement, what does the process say? It says that either party may invoke appraisal. We didn't. We chose not to, and Progressive also chose not to. There are other cases, by the way, out there where the insurance company did invoke appraisal, and those are being litigated as well. Still in court, but they are being litigated. Progressive chose not. We can't make Progressive invoke the appraisal process, and we don't want to. So we're instead resolving it in court, which is our right to go before a jury and try to prove that they breached the contract by paying less than market value. The Article 3 question is, this is not a mere procedural violation. It is a financial injury. If Progressive underpays an insured, they have a financial harm. They're allowed to sue for that. Again, there may be suffocation rights. They may owe child support. They may be turning and giving that money to all sorts of parties, but the point is Progressive doesn't get to keep it. Whether it stays with the insured or gets passed on to a third party has nothing to do with this litigation and it's not a Progressive's concern. That's what the Supreme Court said in Tyler in a case about a year or two ago where the city was arguing that because the homeowner had encumbrances that exceeded the damages that there was no harm, right, that she was just going to have to turn around and give it to the lien holder who had suffocation rights. And the Supreme Court said no. In the event of the dispute, there's a process. What part of the process do you say that Progressive failed to provide? Did they fail to live up to the process that the insurance contract had promised? Yes, because they failed to pay the actual cash value of the vehicle. No, no, no. That assumes the question. I'm saying in the event of a dispute over the actual cash value that you are due, that sets in motion a process. It does not set in motion a process, Your Honor. Well, we're trying to find out what part of the process of consumers, understandably, haggle with insurance adjusters all the time over just how much is due after a collision. I think the point is that the appraisal and the negotiation that is available are not mandatory in terms of the contract. They're simply available as options. And so reading them as mandatory essentially creates some sort of exhaustion requirement within the contract that isn't a mandatory term. That's correct. Permissive. That's right, Your Honor. And Progressive has not included failure to abide by a condition precedent of going through appraisal or something as a defense here. There's simply no question between the parties that if you pay less than actual cash value to breach and you're allowed to sue Progressive, Progressive doesn't even say otherwise. But there have been plenty of car owners in the millions that disagree with an insurance adjuster. They would not be part of this class. They are excluded from the class if that happens. It happens a lot less than you think. But the matter doesn't end there. There are always provisions for disputing the insurance adjuster's recommended or the recommended payment. And then has Progressive not allowed you to, is there no sort of, is there no dispute resolution process at all? There is the ability to invoke an appraisal that either party can do. We have not done that and Progressive has not done that. There is nothing that says you have to do that before you file a lawsuit. It's simply not in the policy. Progressive has never brought it up. This issue has never been raised. It could not have been an abuse of discretion for Judge Coggins to decline to address an argument that Progressive never presented to him. How is that an abuse of discretion? They never asked him. They never even brought up appraisal. They never said you can't certify this class because of this appraisal provision. Judge Coggins wasn't required to define arguments that Progressive wasn't making. But generally the dispute resolution process would be set forth, it wouldn't be up to Judge Coggins to do it. It would be set forth in the insurance contract. Well, Progressive didn't do it and they didn't raise the argument to Judge Coggins. So we're here on an abuse of discretion standard. What you're saying is that this permissive process of negotiation and appraisal is not a mandatory dispute resolution process as we would consider it in a contract. It's simply another path that an insured can take. And what you're saying is that in the definition of the class, any insured that took that path would not properly be part of the class. The class is simply comprised of individuals who have been aggrieved because the contract was breached at the moment that the essential value of the vehicle was improperly calculated. That's exactly right, Your Honor. The contract says that we will pay you the actual cash value at the time of loss. So at the time that the accident happens, that vehicle actually right before it. Right before the accident happens, that vehicle has a market value. Progressive's obligation is to pay what that market value is. They did everything right according to our evidence. The evaluation of ACV was exactly right all the way through except for the application of this projective sold adjustment. Vast amounts of data shows that that's simply not how the market works anymore. And we have three experts who explain that that's not how the market works anymore. Cars are listed at their market price and generally sold for that amount. And so this projective sold adjustment, which was calculated only after Progressive Vendor excluded all the data that they didn't like, that application of that projective sold adjustment was the breach. That's the core issue of this suit. That's why 14 courts have held that these claims are amenable to class treatment. And that was the factual evidence upon which the district court relied in certifying the class. That's exactly right. That expert testimony was in front of the district court judge. In fact, they had filed Dahlberg motions as to, I think, all of our experts. And so we extensively addressed the evidence even in just the Dahlberg briefing prior to then turning to class certification and then went through all the elements of class certification and pointed to the various expert testimony and data that plaintiff would be relying on to prove her claim. And the relevant standard for predominance under Tyson Food is that the question is, if an absent class member were to bring their own individual claim, could they rely on the same evidence that the main plaintiff is relying on? If so, that's a common issue. And in our case, each piece of evidence that the main plaintiff is putting forward, if an absent class member filed their own individual case, they could use the exact same testimony, the exact same expert opinions, and all of that in order to make their claim, which is why this case is amenable to classified treatment and can be resolved. That issue can be resolved by a jury in a single trial. I guess my last point would just be to reiterate back to a couple of these arguments that have come up. If a defendant simply were not raised to the district court, and since we're here on an abusive discretion standard, again, it would be difficult to fault Judge Coggins and say that he made a decision with which no reasonable jurist could agree because he didn't address an argument that had never been raised to him. Progressive hasn't invoked the appraisal clause, and they haven't raised that question before Judge Coggins, so we have no cause to even think of it, let alone address it. You know, you point out that the commonality is the inclusion of this sort of predictive element in the market, and that's the complaint that you're representing basically on behalf of everybody. Right. And that is something that's common to all of them. So your argument is basically since they are going to determine the market value of every case using that wrong aspect, you can have a class action. Right. But my intuition says that there's something more to this than that. That is part of their determination of a loss that is not subject to contract writing. In other words, the writing is that we will give you market value. But market value is a factual question, and they have a method by which they agree to determine that, and the insured may have its own method. It may just go on Kelly Blue Book and go to a couple of others and disagree. And if they can't negotiate it, it clearly is an individualized number for every single car. My trouble problem is while you do have that common element in the negotiations, the litigation is still going to be determining the market price of cars which are individualized. Every given case, it's going to be just a mess. There's no collective aspect about it. There's nothing common about each vehicle that's being assessed. So what the JAMA court in the Ninth Circuit, which also addressed the negotiation adjustment, and what the 13 district courts have pointed out is that you're absolutely right. Valuing a vehicle is an individualized process. Right. But Progressive has already done that. In other words, we're not starting from scratch here. They already assessed the value of the vehicle. And you assessed the value, too. Whether you agree with them or not, you had to make a judgment call. Right. And so you guys agree on all of them. And we say the way that they did it was great. Every step of the process, it was great. This is the only one we disagree on. But you could disagree. And the reason I pointed to that appraisal provision that says if we cannot agree, the important thing about it, it's not mandatory. Judge Boehner has pointed that out, and that's appropriate. The important thing about that, it implies the truth of the matter that it is subject to agreement. In other words, it is an open term. Market value is subject to negotiation and agreement. And the insured does not have to accept it if it doesn't want. Right. In this case, you've made a judgment. You accept it. So we're looking at the term market value, and they say this is what we think market value is. You say nonsense. You've computed it wrong. This is what I say market value. The importance of that provision, if we cannot agree with you on the amount of loss, suggests that it is not a finite term that can be breached. It is a term that can be negotiated. And that indicates a lack of commonality, I would think. Well, nothing in that provision says that that disagreement cannot be resolved by a jury. No. That's what it means by not being mandatory. So yes. Clearly it can. But the only point is it indicates the word market value is not a finite term that somebody can predict what it means. So I would just point to it. Right now you cannot predict what a market value is in a policy. The market value is subject to determination. And the parties can disagree on that. Right. And as you say, they can bypass everything and go to court. Right. But my only point about it is that what it does indicate is that market value is an individualized process. And the only – And that even though the company uses a common process in every – their evaluations, the insured will not use that process. They'll use other processes. And they can go to Kelley – Well, but in this case we're using the same process. So hypothetically, I guess if an insured wanted to bring their own suit and say, I want to throw a dart at the wall and see what number it hits, and I'm going to say that's the market value of my vehicle, I guess they could. But our evidence that we're presenting is – Well, that's because you've agreed to it. But the point is it's individualized.  As the class representatives were presenting this evidence, any individual class member could rely on that same evidence were they to bring their own case, which means that it's common to the class and it's a common method. And I would – one last point that I would make is that class certification is ruled on evidence. The only evidence in the record that was presented to Judge Coggins is that Progressive and plaintiffs agree that this is market value except for the PSA. So they agree with the selection of the comp vehicles. They agree with the mileage adjustment. They agree with the condition adjustment. They agree with everything. There is no – Progressive doesn't have an appraisal expert in this case. They pointed to no other methodologies that could have been used. All of that is conjecture and hypothetical, and Judge Coggins wasn't required to rely on hypothetical conjecture or whatever. Thank you, counsel. Thank you, Your Honor. Judge Berner, do you have further questions? No, thank you. Let me ask you just preliminarily here. It can't be the end of matters if the insurance adjuster comes in and says, okay, we're going to pay you $6,000 for, you know, the cash value of the car. And then the insured party disagrees with that. That doesn't – that can't mean the end of it. The insured is not required just to sort of meekly accept whatever figure the insurance adjuster puts forward. So what are the next steps in your view under the policy for a disagreement over the market value of the car or the cash value of the car? What process does that set in motion? Your Honor, Progressive does not take the position that we don't have some contractual obligation to pay the limit of our liability. And in this instance, we would have to pay actual cash value. Put the microphone closer. We have to pay actual cash value. We understand that. And so if in the end there's a disagreement and they want to bring a lawsuit alleging we have not paid actual cash value, that can be done. The key issue here, though, is whether you can do that on a collective basis, number one, and number two, whether this particular plaintiff, Ms. Freeman, has standing given the unique facts applicable to her. And there's a particular colloquy between Judge Coggins and Plaintiff's Counsel that's in the record that we've been pointing to. But I want you to answer my question. And my question is, in the event of a disagreement, what is the next step? Well, the plaintiff has the – both the insured and Progressive have the option if they want to invoke the appraisal clause. If neither invokes the appraisal clause, then Progressive makes the payment it thinks is due, and then the insured can accept that payment and move on or can bring suit if appropriate. Here, Ms. Freeman expressed no objection. So the appraisal process is not a mandatory term of the agreement? It's not mandatory. We don't say that it is. But what is mandatory, Your Honor, is this. And this is what Judge Coggins asked the Plaintiff's Counsel below. It's in the record, the joint appendix at 420. The last question at the class certification hearing, question from the court, would you agree with me that if the defendant paid your clients the actual cash value for their vehicles, as that term is defined in the policy, would you agree there's no breach of contract? And counsel said, I would, Your Honor. And that's the important point. And it may be that my brother may have misspoken. I want to make sure we're clear about what the court below held, Judge Berner, because you asked the question. What the court below held was that the reason why it thought it was appropriate to certify a class is because he thought we don't have to focus on figuring out what the actual cash value is. All that mattered is, do we think the PSA is appropriate or not? And that's wrong. That is focusing on an intermediate step. The contractual obligation is to pay actual cash value. And the question is, did we do it or not? And that can only be determined individually. To Judge Niemeyer's point, there are a lot of individual aspects that go into valuation. Suppose we take that, that there's an absence of sufficient commonality because the cash value of these automobiles is going to vary. Well, I guess there are different cash values for different markets, depending on what actual geographic location the accident took place in. And many, many different factors. I guess automobiles can be as different as people in some cases. But if we were to say that the class should not have been certified, where does that leave the suit? So in our view, if the class should not be certified because those individual issues predominate, we also think, alternatively, that Ms. Freeman herself lacks standing. That her individual case should also be dismissed because she does not have any concrete financial harm. What she's trying to do is simply say, because I have privity of contract, I have enough there. And this court has rejected that. Surprisingly, Judge Coggins cited the Southern District of New York. Okay, but what she's saying is I have a right eventually to contest the payment that you've offered in court. Now, if we reversed on the class certification issue, doesn't that still leave intact? She would say that still leaves intact her individual right to proceed in court. It does, Your Honor. We could make the standing argument at that time, but she could then bring an individual suit. And I want to make clear, Judge Berner, that while plaintiff's counsel says we've admitted to the valuation except for the PSA, that's not exactly accurate. We've admitted that our methodology is one way of estimating market value. They want to change our methodology and rip out the PSA. And we have taken the position that that has an adverse impact on the accuracy. But as Judge Niemeyer points out, there are many other methodologies that a jury could use to evaluate market value. The NADA guide is an example. I can understand that, but the question I have is why should we resolve the standing issue if in all events, if we reversed on class certification, she would still have the individual right to go forward in court to contest the amount that you've paid. So if that right is hers notwithstanding your standing argument, why, I mean, she may not in a sense have standing to proceed in this particular action, but what practical difference does it make if she's got the right to go forward and contest the matter in court? We think, Your Honor, that her breach of contract claim, she still may not have standing individually, but I do think it would be perfectly appropriate for this court to reverse the certification of the class and remand to the district court for further proceedings as to Ms. Freeman's individual claim and let the district court then address the standing issue or move forward with her individual claim. What is important, as you pointed out, Your Honor, in your decision for this court that Judge Berner participated in and Mr. Deese, just about a month or two ago, standing issues are important in class certifications as well. And that same issue about standing that we think is troublesome for Ms. Freeman is an individual issue that would have to be considered for this whole class. In fact, in the record- Why isn't this court's decision in NETRO that was actually written by my good colleague, Judge Wilkinson, why doesn't the NETRO decision resolve the standing issue? That was a similar case where the plaintiff, if she prevailed, would have to pay the money to someone else, but she was still found to have standing. Well, I think, Your Honor, that ALEG that Judge Niemeyer wrote is actually more applicable. I think the reason is because the theory here is that they think that actual cash value may not have been paid because they have a dispute about the methodology that we used. Just like in ALEG, there was a dispute about the methodology that was used, the inclusion of individual valuations of houses. Okay, but you're not objecting then to a remand to allow the question of individual harm to be pursued by the district court in the course of resolving the standing issue. For Ms. Freeman alone? Yes. We wouldn't object to that, Your Honor. We think what's important at the moment is that we derail this out-of-control class certification frame. Your main concern in this case is with the certification of the class. At least that seems to me to be it. That's correct, Your Honor. Okay. And the standing issue, which can be a sort of a predict, but I'm not sure that it makes, I think the class certification issue makes a huge practical difference. I think the standing issue becomes a little more academic if she has a right to go into court on an individual basis. I think whether she does or she doesn't depends on the question of individual harm, and that's something that can be addressed by the district court on an individual basis on remand. Is that not correct? I think that's right, Your Honor. And I think that the standing issue is most important for our purposes here because it demonstrates another individualized issue that would predominate if this were certified as a class. That may be, but independently of the standing issue, there is still a commonality and predominance question. Correct. Based simply on the fact that, you know, automobiles like people, they differ, and they differ in innumerable particulars depending on the date, depending on where the damage was, depending on the degree to which the methodology may have been used. I mean, it just seemed to me that in this case, it's that certification question that matters. That's right, Your Honor. And to Judge Niemeyer's point, if a jury were forced to handle this case on a class basis and was asked for each individual, were they paid the market value or not, they'd have to consider individual evidence of the value of each vehicle seriatim. And that's just not practical. That's why in the Eighth Circuit, for example, the Court described this process as an explosion of predominance issues. That's why while Plaintiff's Counsel likes to talk about the 14 district courts that are certified, what he doesn't mention to this Court is that there are appellate courts after appellate court in the Ninth Circuit, the Fifth Circuit, the Eighth Circuit, and the Seventh Circuit that have rejected certifying classes like this. And I've made this same argument now in four different courts, Third, Seventh, Ninth, and this Court on 23F petitions, because this issue is being confused at the district court level. Has any court addressed this particular issue yet, the Circuit Court? The Fifth Circuit has, Your Honor. The Ninth Circuit has in two conflicting decisions, Laura and JAMA. In Cartman in the Seventh Circuit, it wasn't involving automobiles, but it was on point. And the Eighth Circuit has as well. But the most recent arguments in the Third Circuit, Seventh Circuit, and the new Ninth Circuit argument, we don't have a decision yet in those. One was the Third Circuit was argued in November of last year. The Seventh Circuit was argued in December of last year. And the Ninth Circuit was argued last month. And a couple of weeks ago, State Farm argued a very similar issue in the Sixth Circuit. All right. Thank you, counsel. Thank you, Your Honor. I don't want to cut off any questions. Judge Berner, do you have any further questions of the attorney here? Judge Niemeyer, do you want to? No, I'm fine. Thank you, Your Honor. We're fine. We'll come down and I'll ask to thank, first of all, I want to thank our good courtroom deputy for this morning's proceedings. And if you will adjourn court, we'll come down and brief counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Nicole G. Berner